IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-01476-PAB-MEH

ROBERT OSTRANDER, individually, and on behalf of all others similarly situated,

     Plaintiff,

v.

CUSTOMER ENGINEERING SERVICES, LLC,
JAMES N. FOX, and
MARY FOX,

     Defendants.

---

**ORDER**

---

This matter is before the Court on Parties' Joint Motion and Memorandum in Support of Approval of Settlement [Docket No. 96]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. BACKGROUND**

On July 13, 2015, plaintiff Robert Ostrander filed this action individually and on behalf of all others similarly situated, alleging that defendants Customer Engineering Services, LLC, James Fox, and Mary Fox violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Docket No. 1. Plaintiff worked for defendants as a technical service representative ("TSR") from November 2011 to September 2014. *Id.* at 2, ¶ 5. Plaintiff alleges that defendants classified him as a non-exempt employee under the FLSA and paid him an hourly rate. *Id.* at 3, ¶ 14. He further asserts that defendants failed to compensate him and members of the putative class for all overtime

hours worked by encouraging plaintiff and class members to work before and after their

scheduled shifts, and by automatically deducting a half-hour of pay for meal breaks

each day, regardless of whether breaks were actually taken. *Id.* at 3-4, ¶¶ 16, 19-20.

On January 19, 2016, plaintiff moved to conditionally certify the action as a

collective action under the FLSA. Docket No. 26. The Court granted the motion on

September 14, 2016, conditionally certifying a class of

> [a]ll individuals who were employed, or are currently employed, by the
> defendants, including subsidiaries or affiliated companies, as technical
> service representatives, tech support representatives, TSRs or any other
> similarly titled position at any time from three (3) years prior to July 13,
> 2015 to the entry of judgment in this action who give their consent, in
> writing, to become party plaintiffs.

Docket No. 48 at 16, ¶ 1. The Court further approved plaintiff's proposed Notice of

Collective Action. *Id.*, ¶ 2.

Following receipt of the court-authorized notice, 68 individuals joined the

collective action as opt-in plaintiffs. Docket No. 96 at 2. Of those 68 individuals, 47

had claims arising within the statutory period. *Id.* The parties began settlement

negotiations on April 11, 2017 before Magistrate Judge Michael E. Hegarty. *See*

Docket No. 89. On April 19, 2017, the parties reached a settlement on all claims. *Id.*

The parties jointly filed the instant motion on June 5, 2017, seeking a court order

approving the settlement agreement and dismissing the action without prejudice,

pending defendants' remittance of the settlement funds. Docket No. 96 at 1.

## II. ANALYSIS

In a lawsuit brought by employees against their employer to recover back wages

under the FLSA, any proposed settlement between the parties must be presented to the

court for a determination of whether the settlement is fair and reasonable. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). This requirement effectuates the "prime purpose" of the FLSA, which is to "aid the unprotected, unorganized and lowest paid of the nation's working population . . . who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945).

### A. Final Class Certification

The FLSA permits an employee or employees to bring an action "[on] behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Courts apply a two-stage approach to determining whether plaintiffs are "similarly situated" for purposes of FLSA collective action certification. *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). First, a court makes an initial determination as to whether plaintiffs are similarly situated for purposes of sending notice to putative class members. *Id.* at 1102. At the "notice" stage, a court applies a fairly lenient standard, requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). After discovery, a court makes a second determination about whether putative class members are similarly situated. *See id.* at 1102-03. In deciding whether to certify a collective action at this stage, courts apply a stricter standard and consider several factors, including: "(1) [the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to

3

each plaintiff; [and] (3) fairness and procedural considerations." *Id.* at 1103 (quoting

*Vaszlavik*, 175 F.R.D. at 678). Final class certification is generally required before a

court may approve a collective action settlement. *See Whittington v. Taco Bell of Am.,*

*Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *2 (D. Colo. Nov. 13, 2013)

(quoting *Peterson v. Mortg. Sources, Corp.*, 2011 WL 3793963, at *4 (D. Kan. Aug. 25,

2011)).

The parties now move for court approval of the proposed settlement; however,

their joint motion does not request final collective action certification or otherwise

address any of the factors the Court must consider in determining whether final

certification is appropriate.

Although plaintiff alleges in his complaint that he and other members of the FLSA

class are "similarly situated" with respect to the conditions of their employment and

defendants' failure to provide overtime compensation, *see* Docket No. 1 at 5, ¶ 30,

these allegations, standing alone, do not provide an adequate basis for a final

certification ruling. First, the allegations are disputed. *See* Docket No. 19 at 4, ¶ 30.

Second, the allegations are not specific to the 47 individuals who have opted in to the

collective action since initial certification. *See Gassel v. Am. Pizza Partners, L.P.*, No.

14-cv-00291-PAB-NYW, 2015 WL 5244917, at *3 (D. Colo. Sept. 8, 2015) (holding that

non-specific, contested allegations in complaint provided no basis for final certification

ruling in absence of motion requesting final certification); *see also Thiessen*, 267 F.3d at

1102-03 (although initial certification "requires nothing more than substantial allegations

that the putative class members were together the victims of a single decision, policy, or

4

plan," final certification "utiliz[es] a stricter standard" involving more individualized consideration of plaintiffs' claims (internal quotations omitted)).

The Court therefore denies the present motion. If the parties reapply for Court approval of the settlement agreement, they should address the factors relevant to final certification, as well as the issues discussed below.

## B.  Notice

Although § 216(b) does not require that a court hold a fairness hearing before approving a collective action settlement, courts generally require, at a minimum, that opt-in plaintiffs be given notice of any settlement and an opportunity to object. *Tommey v. Comput. Scis. Corp.*, 2015 WL 1623025, at *1 (D. Kan. Apr. 13, 2015); *see also Goldsby v. Renosol Seating, LLC*, 2013 WL 6535253, *10 (S.D. Ala. Dec. 13, 2013) ("[T]he majority of the courts approve a [FLSA collective action] settlement only after notice has been provided to the opt-in plaintiffs and a fairness hearing conducted, or at the least, what is required is a statement to the Court that the opt-in plaintiffs have had notice of the settlement and an opportunity to object.").

The parties have provided no evidence that the 47 opt-in members of the collective action were given notice of the proposed settlement agreement and an opportunity to object. In fact, the parties' settlement agreement expressly precludes class members from objecting to the settlement, requesting exclusion from the settlement, or disputing their individual settlement awards. Docket No. 95 at 9, ¶ 51. The parties' proposed notice of settlement reflects this prohibition. The notice, which the parties contemplate will be sent along with the settlement checks after Court approval of

the parties' agreement, presents the settlement as a *fait accompli*, never informing class

members of their right to object to the settlement or challenge their individual awards.

Docket No. 95 at 17-18.

The Court finds that the parties' failure to provide opt-in plaintiffs with notice of the

settlement and an opportunity to object is a sufficient basis, standing alone, to deny the

present motion. *See Gassel*, 2015 WL 5244917, at *3.[1]

## C. Settlement

Before approving an FLSA settlement, a court must find that: (1) the agreement is

the result of a bona fide dispute; (2) the proposed settlement is fair and reasonable to all

parties involved; and (3) the proposed settlement contains a reasonable award of

attorneys' fees and costs. *Lynn's Food Stores, Inc.*, 679 F.2d at 1355; *Gassel*, 2015 WL

---

[1]The consent forms signed by the opt-in plaintiffs "designate[d] the Class
Representative as [their] agent to make decisions on [their] behalf concerning the
litigation, the method and manner of conducting this litigation, the entering of an
agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other
matters pertaining to this lawsuit." Docket No. 39-1 at 2; *see also* Docket No. 26-2 at 3
(Notice of Collective Action). However, in cases involving similar consent forms, courts
have continued to require that parties provide opt-in plaintiffs with notice of the
settlement and an opportunity to object prior to final court approval of the settlement
agreement. *See, e.g.*, *Sardina v. Twin Arches P'ship, Ltd.*, No. 15-cv-00054-REB-KLM,
2017 WL 3503367, at *2-3 (D. Colo. July 20, 2017) (requiring that opt-in plaintiffs be
provided with notice of settlement and opportunity to object, despite fact that consent
form authorized named plaintiffs to act on behalf of class members in all matters
pertaining to the lawsuit); *Sardina*, No. 15-cv-00054-REB-KLM, Docket No. 157-1 (opt-
in consent form authorizing "the above Plaintiffs and their law firm . . . to make
decisions on [class members'] behalf concerning the litigation, the manner and method
of conducting this litigation, attorney's fees and costs, and all other matters pertaining to
this lawsuit"). *But see Ruiz v. Act Fast Delivery of Colo.*, No. 14-cv-00870-MSK-MJW,
Docket No. 132, at 11 n.5 (D. Colo. Jan. 9, 2017) (suggesting, in dicta, that opt-in
consent form "authoriz[ing] the named plaintiffs" to make decisions on behalf of class
would obviate need to provide opt-in plaintiffs with notice of settlement and opportunity
to object).

5244917, at *3. The Court finds that the third factor, the reasonableness of the

attorneys' fees and costs requested by plaintiffs' counsel, precludes approval of the

settlement agreement at this time.

Under 29 U.S.C. § 216(b), a court in an FLSA action "shall, in addition to any

judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be

paid by the defendant, and costs of the action." In common fund cases, courts in this

circuit may calculate a reasonable attorney's fee using either the percentage of the fund

method or the lodestar method. *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994). A

fee calculated under either method, however, must be adjusted in accordance with the

following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the skill requisite to perform the legal service properly; (4)
> the preclusion of employment by the attorney due to acceptance of the
> case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7)
> time limitations imposed by [the] client or the circumstances; (8) the
> amount involved and the results obtained; (9) the experience, reputation
> and ability of the attorneys; (10) the undesirability of the case; (11) the
> nature and length of the professional relationship with the client; and (12)
> awards in similar cases.

*Whittington*, 2013 WL 6022972, at *5 (citing *Johnson v. Ga. Highway Express, Inc.*, 488

F.2d 714, 717-19 (5th Cir. 1974); *see also Gottlieb*, 43 F.3d at 483 (stating that *Johnson*

factors must be considered regardless of whether court uses lodestar method or

percentage of fund method to calculate attorney's fee).

At present, the Court lacks sufficient information to determine whether the fees

and costs requested by plaintiffs' counsel are reasonable. The parties' agreement in this

case provides that plaintiffs' counsel will receive $152,500.00 in attorneys' fees and

costs, to be deducted from the $300,000.00 in total settlement proceeds. *See* Docket

No. 96 at 7; Docket No. 95 at 5-7, ¶ 37.  This award consists of $135,500 in attorney's

fees, $12,000 in outstanding expenses, and $5,000 in anticipated settlement

administration costs.  Docket No. 96-3 at 6, ¶¶ 18, 20.  Plaintiffs' counsel alleges that

more than 450 hours were spent on the litigation.  Docket No. 96-3 at 5, ¶ 17.

Importantly, however, plaintiffs' counsel has not submitted a detailed description

of the types of services rendered during those 450 hours or a contemporaneous record

of "how those hours were allotted to specific tasks."  *Jane L. v. Bangerter*, 61 F.3d 1505,

1510 (10th Cir. 1995).  Nor has counsel provided an account of the various expenditures

comprising the $17,000 in costs.  Absent such information, the Court is unable to

determine whether $152,500 constitutes a reasonable award of attorneys' fees and

costs.  *See Barbosa v. Nat'l Beef Packing Co., LLC*, 2015 WL 4920292, at *8 (D. Kan.

Aug. 18, 2015) (considering hours recorded in billing statements and "examining each

time entry" to determine whether time spent on litigation was reasonable); *Bruner v.

Sprint/United Mgmt. Co.*, 2009 WL 2058762, at *5 (D. Kan. July 14, 2009) (denying

proposed award of attorneys' fees and costs based, in part, on counsel's failure to

present "any contemporaneous record of hours worked"); *see also* D.C.COLO.LCivR

54.3(b)(2) (requiring motion for attorney fees to be supported by "a detailed description

of the services rendered").[2]

The parties also fail to address how the attorneys' fees were negotiated in relation

---

[2]The Court further notes that the hourly rates and hours billed by class counsel
do not equal the total lodestar amount calculated at Denver market rates.  Class
counsel stated that the total lodestar amount is $172,622.50.  Docket No. 96-3 at 5,
¶ 17.  However, multiplying the listed hourly rates for each of the attorneys and legal
assistants by the number of hours worked results in a total fee of $171,167.50.  *See id.*
at 5-6, ¶ 17.

to the class members' settlement. Any future motion should therefore address this issue. *See Gassel*, 2015 WL 5244917, at *5; *Vogenberger v. ATC Fitness Cape Coral, LLC*, 2015 WL 1883537, at *1 n.2 (M.D. Fla. Apr. 24, 2015) (noting that parties' first motion for settlement approval was denied without prejudice for failure "to state that attorneys' fees were negotiated separately").

### D. Placing the Settlement Agreement Under a Filing Restriction

In an effort to further "Congress's intent both to advance employees' awareness of their FLSA rights and to ensure pervasive implementation of the FLSA in the workplace," many courts have held that there is a strong presumption in favor of public access to settlement documents in FLSA actions. *Dees v. Hydrady, Inc.*, 706 F. Supp. 2d 1227,1245 (M.D. Fla. 2010); *see also Alewel v. Dex One Serv., Inc.*, 2013 WL 6858504, at *3 (D. Kan. Dec. 30, 2013) ("[I]nsofar as [a settlement agreement] goes to the heart of the matter being adjudicated – and implicates the underlying policies of the FLSA – the presumption of public access that attaches to judicial documents is at its strongest." (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 337-38 (S.D.N.Y. 2012)). A party may overcome such a presumption only by "articulat[ing] a real and substantial interest that justifies depriving the public of access to the records that inform [the court's] decision-making process." *JetAway Aviation, LLC v. Bd. of Cty. Comm'rs of Cty. of Montrose, Colo.*, 754 F.3d 824, 826 (10th Cir. 2014) (quoting *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135-36 (10th Cir. 2011).

In this case, the parties filed a joint motion for leave to file their settlement agreement and attached exhibits under seal. Docket No. 94. The magistrate judge

granted the request pursuant to D.C.COLO.LCivR 7.2. *See* Docket No. 98.  As this

Court has previously noted, however, satisfaction of D.C.COLO.LCivR 7.2 does not

mean that the parties have overcome the presumption in favor of public access.  *See*

*Gassel*, 2015 WL 5244917, at \*5.  The parties have asserted three bases for filing the

settlement documents under restriction: (1) the settlement agreement includes exhibits

that disclose the identities of putative class members; (2) the parties agreed to maintain

confidentiality of the settlement as a material term of their agreement; (3) disclosure

would expose defendants to additional litigation.  Docket No. 94 at 3-4, ¶¶ 6-9.  The

Court finds the second and third arguments unpersuasive.  The mere fact that a

settlement agreement contains a confidentiality term is not, by itself, a sufficient reason

to deny public access.  *See Alewel*, 2013 WL 6858504, at \*4 ("The existence of a

confidentiality provision in a FLSA settlement agreement, without more, does not

constitute good cause, let alone a compelling reason, to seal." (alteration and brackets

omitted) (quoting *Luo v. Zynga Inc.*, 2013 WL 5814763, at \*3 (N.D. Cal. 2013))); *Dees*,

706 F. Supp. 2d at 1246 ("The parties to a lawsuit are not the only people who have a

legitimate interest in the record compiled in a legal proceeding[, and] . . . [t]he

determination of good cause cannot be elided by allowing the parties to seal whatever

they want . . . ." (quoting *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178

F.3d 943, 944-45 (7th Cir. 1999))).  Moreover, the parties' concern about exposing

defendants to further litigation is both unsubstantiated and contrary to Congress's goal

of "vindicat[ing] FLSA rights throughout the workplace."  *Dees*, 706 F. Supp. 2d at 1244;

*see also id.* at 1245 ("Preventing the employee's co-workers or the public from

discovering the existence or value of their FLSA rights is an objective unworthy of implementation by a judicial seal . . . .").

The Court agrees that some level of redaction may sometimes be appropriate to protect litigants' personal information. *See Anderson v. Walgreen Co.*, No. 14-cv-02642, 2016 WL 74934-RM-MJW, at *2 (D. Colo. Jan. 7, 2016) (noting that "a sufficient showing to overcome the presumption [in favor of public access] may be found where the records contain . . . private or personally identifiable information" (citing Fed. R. Civ. P. 5.2)); *Gassel*, 2015 WL 5244917, at *5. However, the parties have not demonstrated that the specific kinds of personal information contained in the settlement documents – namely, class members' names, dates of employment, dates of overtime work, and individual settlement amounts – are entitled to protection. *Compare* Fed. R. Civ. P. 5.2 (requiring redaction of social-security numbers, taxpayer-identification numbers, birth dates, financial-account numbers, and minors' names), *with* Docket No. 95 at 19-20 (chart containing names, hire/termination dates, overtime dates, and individual settlement amounts of class members); *see also McGee v. Pilot Thomas Logistics, LLC*, No. 16-cv-02043-RM-MJW, 2017 WL 4679818, at *3 (D. Colo. Oct. 18, 2017) ("bare representation" regarding existence of confidential information pertaining to defendant's business was insufficient to justify restriction of settlement agreement). Nor have they identified a particularized and serious injury that would result from disclosure. *See* D.C.COLO.LCivR 7.2(c)(3); Docket No. 94 at 3, ¶ 6 (noting that "privacy rights and interests [of class members] *may* be violated" if settlement agreement containing personal information is disclosed to the public (emphasis added)); *Anderson*, 2016 WL

74934, at *2 (assertion that disclosure "*could* bias parties in the similar pending lawsuits towards actions not justified by the evidence" did not identify particularized and serious injury that would result from public access).[3]

In sum, the parties have failed to justify the continued restriction of the settlement agreement and attached exhibits. Any future motion for settlement approval should address the concerns raised above and provide a justification for redacting class members' names, dates of employment, and amounts of settlement.

## III. CONCLUSION

The above-cited deficiencies preclude approval of the parties' settlement agreement at this time. For the foregoing reasons, it is

**ORDERED** that the Parties' Joint Motion and Memorandum in Support of Approval of Settlement [Docket No. 96] is **DENIED** without prejudice.

DATED March 5, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

---

[3]As an alternative to filing the settlement documents under restriction, the parties' motion to restrict requests that the Court permit redaction of the identities of putative class members. See Docket No. 94 at 4, ¶ 11. The Court notes, however, that class members' names have already been made public by virtue of the opt-in consent forms. *See, e.g.*, Docket No. 64-1 (opt-in consent form for Juan Balboa). Thus, it is not clear that the proposed redaction would serve any purpose.