IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-01476-PAB-MEH

ROBERT OSTRANDER, individually, and on behalf of all others similarly situated,

    Plaintiff,

v.

CUSTOMER ENGINEERING SERVICES, LLC,
JAMES N. FOX, and
MARY FOX,

    Defendants.

---

# ORDER

---

This matter comes before the Court on Plaintiffs' Renewed Unopposed Motion and Memorandum in Support of Approval of Settlement [Docket No. 115]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

On July 13, 2015, plaintiff Robert Ostrander filed this action individually and on behalf of all others similarly situated, alleging that defendants Customer Engineering Services, LLC, James Fox, and Mary Fox violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Docket No. 1. Plaintiff worked for defendants as a technical service representative ("TSR") from November 2011 to September 2014. *Id.* at 2, ¶ 5. Plaintiff alleges that defendants classified him as a non-exempt employee under the FLSA and paid him an hourly rate. *Id.* at 3, ¶ 14. He further asserts that defendants failed to compensate him and members of the putative class for all overtime

hours worked by encouraging plaintiff and class members to work before and after their scheduled shifts, and by automatically deducting a half hour of pay for meal breaks each day, regardless of whether breaks were actually taken. *Id.* at 3-4, ¶¶ 16, 19-20.

On January 19, 2016, plaintiff moved to conditionally certify the action as a collective action under the FLSA. Docket No. 26. The Court granted the motion on September 14, 2016, conditionally certifying a class of

> [a]ll individuals who were employed, or are currently employed, by the defendants, including subsidiaries or affiliated companies, as technical service representatives, tech support representatives, TSRs or any other similarly titled position at any time from three (3) years prior to July 13, 2015 to the entry of judgment in this action who give their consent, in writing, to become party plaintiffs.

Docket No. 48 at 16, ¶ 1. The Court further approved plaintiff's proposed Notice of Collective Action. *Id.*, ¶ 2.

Following receipt of the court-authorized notice, 68 individuals joined the collective action as opt-in plaintiffs. Docket No. 115 at 2. Of those 68 individuals, 47 had claims arising within the statutory period. *Id.*[1] The parties began settlement negotiations on April 11, 2017 before Magistrate Judge Michael E. Hegarty. *See* Docket No. 89. On April 19, 2017, the parties reached a settlement on all claims. *Id.* On June 5, 2017, the parties jointly moved for a court order approving the settlement agreement and dismissing the action without prejudice, pending defendants' remittance of the settlement funds. Docket No. 96 at 1. The Court denied the motion without prejudice on March 5, 2018, finding that the parties had failed to (1) request collective

---

[1] There are 48 total members of the putative collective – named plaintiff Robert Ostrander plus the 47 individuals with claims falling within the statutory period who have affirmatively opted in to the lawsuit.

2

action certification; (2) provide any evidence that the 47 opt-in members of the collective action were given notice of the proposed settlement agreement and an opportunity to object; and (3) provide sufficient information to support plaintiffs' counsel's requested fee award. See Docket No. 112. Plaintiffs filed a renewed, unopposed motion for final settlement approval on June 4, 2018. Docket No. 115.

## II. ANALYSIS

In a lawsuit brought by employees against their employer to recover back wages under the FLSA, any proposed settlement between the parties must be presented to the court for a determination of whether the settlement is fair and reasonable. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). This requirement effectuates the "prime purpose" of the FLSA, which is to "aid the unprotected, unorganized and lowest paid of the nation's working population . . . who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945).

### A. Final Class Certification

The FLSA permits an employee or employees to bring an action "[on] behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Courts apply a two-stage approach to determining whether plaintiffs are "similarly situated" for purposes of FLSA collective action certification. *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). First, a court makes an initial determination as to whether plaintiffs are similarly situated for purposes of sending notice to putative class members. *Id.* at 1102. At the "notice" stage, a court applies a

fairly lenient standard, requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). After discovery, a court makes a second determination about whether putative class members are similarly situated. *See id.* at 1102-03. In deciding whether to certify a collective action at this stage, courts apply a stricter standard and consider several factors, including: "(1) [the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id.* at 1103 (quoting *Vaszlavik*, 175 F.R.D. at 678). Final class certification is generally required before a court may approve a collective action settlement. *See Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *2 (D. Colo. Nov. 13, 2013) (quoting *Peterson v. Mortg. Sources, Corp.*, 2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011)).

Plaintiff contends that the requirements for final collective action certification are satisfied because (1) opt-in plaintiffs all worked as technical service representatives for defendants, performing the same job duties; (2) defendants paid plaintiffs under the same allegedly unlawful payment scheme; and (3) defendants' defenses apply equally to all plaintiffs. Docket No. 115 at 4. The Court agrees that opt-in plaintiffs are similarly situated for purposes of final certification. In his complaint, plaintiff alleged that he and other members of the putative collective had similar job titles, job descriptions, and job duties. Docket No. 1 at 5, ¶ 30. These allegations are supported by declarations from

4

Mr. Ostrander and opt-in plaintiff Donald Parker. Both individuals state that their primary job duties were to maintain and repair printers for customers of Customer Engineering Services ("CES"). *See* Docket No. 26-3 at 2, ¶ 3 (declaration of Robert Ostrander); Docket No. 26-5 at 2, ¶ 3 (declaration of Donald Parker); *see also* Docket No. 26-6 (TSR position description). They also describe similar work schedules, with days beginning at home before the start of their scheduled shifts and half-hour meal breaks frequently spent driving to the next service call or responding to messages from CES. *See* Docket No. 26-3 at 2-4, ¶¶ 7-13; Docket No. 26-5 at 2-4, ¶¶ 6-7, 10-14. Based on these declarations and other evidence submitted by plaintiff, the Court previously found that all members of the putative collective were subject to the same two compensation policies at issue in this lawsuit: defendants' commuter policy, under which defendants deducted thirty minutes of commute time from the start and end of TSRs' scheduled shifts; and defendants' lunch break policy, which required TSRs to log a thirty-minute lunch break even if no break was taken. *See* Docket No. 48 at 7-9.[2] Given the uniform application of defendants' compensation policies, defendants' principal defenses – that the unpaid time was "non-compensable under federal law, *de minimis* and/or unknown" to defendants, Docket No. 19 at 6-7; Docket No. 115 at 7 –

---

[2]While final certification typically requires a stronger and more particularized evidentiary showing than initial certification, *see Thiessen*, 267 F.3d at 1102-03, defendants have effectively stipulated to the propriety of final certification by agreeing to settle the case on a collective basis. *See* Docket No. 115 at 4; *see also Davis v. Crilly*, 292 F. Supp. 3d 1167, 1172 (D. Colo. 2018) (citing parties' agreement to settlement and joint request for approval as supporting final certification); *Hodge v. Signia Mktg., Ltd.*, No. 15-cv-02839-KMT, 2017 WL 5900344, at *2 (D. Colo. Nov. 30, 2017) (finding that defendant's failure to file a de-certification motion, despite an opportunity to do so, amounted to a concession that the opt-in plaintiffs were similarly situated).

also apply equally to all members of the putative collective.  Finally, fairness and procedural considerations support final certification.  Collective actions allow plaintiffs to pool their resources to litigate claims they might otherwise be unable to pursue.  Moreover, the parties' settlement in this case will only affect the rights of those individuals who have affirmatively opted in to the lawsuit.  *See Davis*, 292 F. Supp. 3d at 1171-72 (citing plaintiffs' ability to pool their resources and the limited effect of the settlement as fairness and procedural considerations supporting final certification).

For the foregoing reasons, the Court will grant final collective action certification.

**B.  Notice**

Although § 216(b) does not require that a court hold a fairness hearing before approving a collective action settlement, courts generally require, at a minimum, that opt-in plaintiffs be given notice of any settlement and an opportunity to object.  *Tommey v. Comput. Scis. Corp.*, 2015 WL 1623025, at *1 (D. Kan. Apr. 13, 2015); *see also Goldsby v. Renosol Seating, LLC*, 2013 WL 6535253, *10 (S.D. Ala. Dec. 13, 2013) ("[T]he majority of the courts approve a [FLSA collective action] settlement only after notice has been provided to the opt-in plaintiffs and a fairness hearing conducted, or at the least, what is required is a statement to the Court that the opt-in plaintiffs have had notice of the settlement and an opportunity to object.").

In his renewed motion, plaintiff states that counsel sent notice of the proposed settlement and a copy of the agreement to all forty-eight opt-in plaintiffs via email and U.S. mail on April 2, 2018.  Docket No. 115 at 3; *see also* Docket No. 115-3 (notice).  Counsel received signed consent forms from each of the forty-eight opt-in plaintiffs,

which have been submitted to the Court. *See* Docket Nos. 115-5, 115-6. Based on this information, the Court finds that all members of the putative collective have been provided with adequate notice of the settlement and an opportunity to object.

**C. Settlement**

Before approving an FLSA settlement, a court must find that: (1) the agreement is the result of a bona fide dispute; (2) the proposed settlement is fair and reasonable to all parties involved; and (3) the proposed settlement contains a reasonable award of attorneys' fees and costs. *Lynn's Food Stores, Inc.*, 679 F.2d at 1355; *Gassel v. Am. Pizza Partners, L.P.*, No. 14-cv-00291-PAB-NYW, 2015 WL 5244917, at *3 (D. Colo. Sept. 8, 2015).

*1. Bona Fide Dispute*

Parties seeking approval of an FLSA settlement must provide the Court with sufficient information to determine whether a bona fide dispute exists. *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010). To meet this obligation, the parties must describe: (1) the nature of the dispute; (2) the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justifications for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.* The mere existence of an adversarial lawsuit does not satisfy these requirements. *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719-20 (E.D. La. 2008).

Plaintiff alleges that defendants failed to pay him and members of the collective

7

for all regular and overtime hours worked by (1) encouraging plaintiffs to perform work before the start and end of their shifts while deducting a half hour of commute time from the beginning and end of their scheduled work days, and (2) deducting a half hour of pay each day for meal breaks, regardless of whether meal breaks were taken. Docket No. 1 at 4, ¶¶ 19-20; Docket No. 115-1 at 2, ¶ 1. Defendants deny these allegations and assert various defenses, including the arguments that the unpaid time was *de minimis*, unknown to defendants, and/or not compensable under federal law. *See* Docket No. 19 at 5-7; Docket No. 115 at 7; Docket No. 115-1 at 2, ¶ 3. Moreover, defendants opposed conditional certification, arguing that their written time recording and pay policies were FLSA compliant and that TSRs' "day-to-day commute habits and corresponding, self-reported time records . . . create[d] highly individualized inquires not suitable for a collective action." Docket No. 37 at 7-8, 10. The Court finds that a bona fide dispute exists.

### 2. Fair and Reasonable

To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA's policy rationales. *Dees*, 706 F. Supp. 2d at 1241. Courts considering both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement. *See, e.g.*, *Dail v. George A. Arab Inc.,* 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla. 2005) (evaluating fairness of settlement in individual action); *Collins*, 568 F. Supp. 2d at 721-22 (evaluating settlement in collective action). The Tenth Circuit considers the following factors when deciding whether to approve a class action

settlement under Fed. R. Civ. P. 23(e): (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

The Court finds that these factors support approval of the proposed settlement. The parties did not reach a settlement in this matter until after they had engaged in meaningful discovery, *see* Docket No. 115 at 2, 6, and participated in a full-day mediation before Judge Hegarty on April 11, 2017. *Id.* at 2. Under the terms of the settlement agreement, defendants agree to pay $300,000, which consists of (1) $135,015 in individual settlement payments; (2) a $7,500 service payment for Mr. Ostrander; (3) $4,985 for settlement administrative costs; and (4) a $152,500 fee and expense award to class counsel. Docket No. 115 at 7; Docket No. 115-1 at 6-7. Plaintiff represents that the parties' settlement was based on plaintiffs' average hourly wages, number of weeks worked, and amount of weekly overtime hours. Docket No. 115 at 6-7. Under the settlement, each plaintiff stands to recover $32, or approximately 1.5 hours of unpaid time, per week worked. *Id.* at 7. This results in an average total recovery of $2,812.95 per plaintiff. *Id.* Plaintiff contends that this amount constitutes a fair compromise of the claims in this case, given the risks of protracted litigation, the uncertainty surrounding the nature and amount of recoverable damages, and defendants' "multiple challenging defenses" to liability. *Id.* at 6-7. Class counsel has

9

further expressed the opinion that the settlement agreement "is fair, reasonable, and adequate and is in the best interest of the Class Members in light of all known facts and circumstances." Docket No. 115-1 at 3, ¶ 7. Based on this information, and upon consideration of the relevant factors, the Court finds the parties' proposed settlement to be fair and reasonable.

The Court also finds that a $7,500 service payment to Mr. Ostrander is reasonable. Mr. Ostrander has been involved at all stages of the litigation, responding to discovery, participating in an all-day deposition, and appearing for the mediation before Judge Hegarty. Docket No. 115 at 7-8. Moreover, $7,500 is commensurate with incentive fees awarded in other cases in this district. *See, e.g.*, Pliego v. Los Arcos Mexican Restaurants, Inc., 313 F.R.D. 117, 131 (D. Colo. 2016) (finding $7,500 proposed service award reasonable where the named plaintiff assisted counsel in reviewing documents produced by defendants and participated in settlement conference); *Shaw v. Interthinx*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *9 (D. Colo. Aug. 22, 2015) (approving $10,000 incentive awards to each of the five named plaintiffs).

The Court must next determine whether the settlement agreement is consistent with the purpose of the FLSA. To determine whether a settlement complies with the FLSA, courts consider: (1) the presence of other similarly situated employees; (2) the likelihood that plaintiffs' circumstances will recur; and (3) whether defendants have a history of non-compliance with the FLSA. *Dees,* 706 F. Supp. 2d at 1244. Also relevant is whether the proposed settlement contains a confidentiality provision. "It is

well-settled that . . . a confidentiality provision in an FLSA settlement agreement 'contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA rights.'" *Hoffman v. Poulsen Pizza LLC, et al.*, 2016 WL 2848919, at *3 (D. Kan. May 16, 2016) (quoting *Barbosa v. Nat'l Beef Packing Co., LLC*, 2014 WL 5099423, at *8 (D. Kan. Oct. 10, 2014); *see also Gamble v. Air Serv. Corp.*, 247 F. Supp. 3d 1302, 1306 (N.D. Ga. 2017) (noting that confidentiality provisions in FLSA settlements not only "frustrate the spirit and intent of the statute," but also "arguably violate provisions of the FLSA itself").

There is no evidence in the record that defendants' non-compliance with the FLSA constitutes a continuing violation. However, the proposed settlement contains a confidentiality term, which generally prohibits members of the collective from disclosing information regarding the settlement to third parties. Docket No. 115-1 at 10. Nevertheless, the parties have made the terms of the settlement agreement public by filing it on the Court's docket without a restriction. Because the case can provide notice to potential plaintiffs of their FLSA rights, the parties' settlement does not undermine the purposes of the FLSA. *See Dees*, 706 F. Supp. 2d at 1244-45 (discussing the importance of public access to settlement agreements).

### 3. Attorney's Fees and Costs

Counsel represents that plaintiffs' recovery was negotiated separately from attorney's fees and costs. Docket No. 115-8 at 5-6, ¶ 18. The Court must nevertheless consider whether counsel's requested award of $152,500 is reasonable. *See* 29 U.S.C. § 216(b) (providing that a court in an FLSA action "shall, in addition to any judgment

awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); *Silva v. Miller*, 307 F. App'x 349, 351-52 (11th Cir. 2009) (unpublished) (holding that contingency contract between counsel and plaintiff did not abrogate court's duty to review the reasonableness of legal fees in an FLSA settlement). In common fund cases, courts in this circuit may calculate a reasonable attorney's fee using either the percentage of the fund method or the lodestar method. *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994). A fee calculated under either method, however, must be adjusted in accordance with the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by [the] client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Whittington*, 2013 WL 6022972, at *5 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also Gottlieb*, 43 F.3d at 483 (stating that *Johnson* factors must be considered regardless of whether court uses lodestar method or percentage of fund method to calculate attorney's fee).

Plaintiff's counsel seeks approval of a $152,500 fee award consisting of $135,500 in attorney's fees and $17,000 in actual and anticipated costs. *See* Docket No. 115-8 at 7-8, ¶¶ 20, 22 (discussing amount of fees and costs).[3] Counsel alleges

---

[3] Mr. Stephan states that class counsel is seeking approximately $135,000 in fees. Docket No. 115-8 at 7, ¶ 20. The Court assumes he is rounding down from the actual figure, because $135,000 plus $17,000 does not equal the $152,500 award indicated in the parties' settlement agreement. *See* Docket No. 115-1 at 7.

that a total of 530.5 hours were expended on the litigation. See Docket No. 115-8 at 7.

The evidence presented is insufficient to support the requested fee award. In its order denying plaintiff's first motion for final settlement approval, the Court found that it could not determine whether the fees and costs requested by counsel were reasonable given the absence of any "detailed description of the types of services rendered during [the 450 hours billed on the case] or a contemporaneous record of how those hours were allotted to specific tasks." Docket No. 112 at 8 (internal quotation marks omitted). Plaintiff's renewed motion for settlement approval does not cure this deficiency. Counsel has submitted a chart summarizing the hours billed by each attorney and assistant on the case. See Docket No. 115 at 10-11; Docket No. 115-8 at 6-7. However, the descriptions of the services rendered are too general to allow for any meaningful review.[4] There are also several unexplained inconsistencies in counsel's fee request. For example, the hours listed in the billing chart add up to 583, not 530.5. See Docket No. 115 at 10-11. Additionally, counsel asserts that $600 is a reasonable hourly rate for attorneys Brian Gonzales, James Zouras, and Ryan Stephan even though counsel proposed an hourly rate of $500 in connection with plaintiff's first motion for settlement approval. See Docket No. 96-3 at 5-6, ¶¶ 13, 17. Counsel's failure to explain the $100 increase in billing rates is noteworthy given that most of the work

---

[4] Some of descriptions also suggest that counsel is seeking reimbursement for non-billable tasks, such as clerical work. See Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989) (noting that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"); Castro v. First Nat'l Collection Bureau, Inc., No. 11-cv-02298-REB-KMT, 2012 WL 4468318, at *2 n.4 (D. Colo. Sept. 27, 2012) (finding "routine and inconsequential clerical tasks," such as "electronically filing documents with the court or sending an email to the court," "not properly billable regardless who performs them").

performed on this case was completed as of the filing of plaintiff's original motion.[5]
Finally, forty of the hours included in counsel's billing chart were expended after the
Court denied plaintiff's first motion for final settlement approval. *See* Docket No. 115 at
10. To the extent this time was spent compiling information that counsel should have
provided in plaintiff's initial motion, the Court finds that reimbursement would be
inappropriate.

Given the various deficiencies in counsel's renewed fee request, the Court is
unable to determine a reasonable fee using the lodestar method. The Court will

---

[5]The Court also finds counsel's proposed billing rates to be unsupported. Mr. Gonzales relies on the 2014 edition of the National Law Journal's annual Survey of Law Firm Economics, but the rates proposed by counsel are higher than the median billing rates reported in that survey. *See* Docket No. 115-10 at 14 (reporting median billing rates of $440 for an attorney with 21 to 30 years of experience, $390 for an attorney with 16 to 20 years of experience, $225 for an attorney with 4 or 5 years of experience, and $200 for an attorney with 2 or 3 years of experience). Counsel's rates are also higher than the billing rates approved in recent FLSA cases in this district. *See, e.g.*, *Lopez v. Highmark Constr., LLP*, No. 17-cv-01068-CMA-MLC, 2018 WL 1535506, at *4 (D. Colo. Mar. 29, 2018) (approving of $300 hourly rate for attorney with eleven years of experience representing immigrant workers in FLSA actions); *Nicholas v. Double J Disposal, Inc.*, No. 14-cv-01158-PAB-GPG, 2016 WL 559185, at *3-4 (D. Colo. Feb. 12, 2016) (finding $300 to be a reasonable hourly rate for attorneys with eight to ten years of legal experience); *Rios v. Midwest Partitions, Inc.*, No. 15-cv-01456-PAB-MEH, 2016 WL 7212480, at *6 (D. Colo. Dec. 13, 2016) (approving hourly rates of $225 for attorney with over 35 years representing employees and unions); *Baker v. Vail Resorts Mgmt. Co.*, No. 13-cv-01649-PAB-CBS, 2014 WL 700096, at *3 (D. Colo. Feb. 24, 2014) (finding $280 to be a reasonable hourly rate in FLSA cases for attorneys with between seven and fourteen years of experience); *see also US Commodity Futures Trading Comm'n v. R2 Capital Grp. LLC*, No. 14-cv-02182-MSK-KLM, 2017 WL 4350365, at *2-3 (D. Colo. Jan. 27, 2017) (surveying billing rates approved in a variety of cases in the District of Colorado and finding $450 and $250 to be reasonable hourly rates for attorneys with more than thirty and more than nine years of experience, respectively). In 2015, this Court specifically found $300 to be a reasonable hourly rate for Mr. Stephan and Mr. Gonzales in an FLSA case. *Albu v. Delta Mech. Inc.*, No. 13-cv-03087-PAB-KMT, 2015 WL 4483992, at *6 (D. Colo. June 30, 2015), *report and recommendation accepted by* 2015 WL 4467434 (D. Colo. July 22, 2015).

therefore calculate a reasonable fee using a percentage of the fund approach. While fee awards in common fund cases "have ranged from four percent to 58 per cent of the common fund," *Barbosa v. Nat'l Beef Packing Co., LLC*, 2015 WL 4920292, at *11 (D. Kan. Aug. 18, 2015), an award equaling thirty-three percent of the gross settlement amount represents a customary, and presumptively reasonable, fee in this circuit. *See Davis*, 292 F. Supp. 3d at 1174 (finding award equal to thirty-seven percent of gross settlement amount to be "well within the normal range for a contingent fee award"); *Koehler v. Freightquote.com, Inc.*, 2016 WL 3743098, at *7 (D. Kan. July 13, 2016) (approving fee award amounting to thirty-three percent of the common fund); *Barbosa*, 2015 WL 4920292, at *11 (finding that fee award, which equaled thirty-three percent of the total settlement amount, was "within the customary percentage of the fund approved" by the court); *cf. Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.").

Considering the *Johnson* factors listed above, the Court agrees that a combined award of attorney's fees and costs equaling one third of the gross settlement amount – or $100,000 – is appropriate. While counsel has extensive experience litigating FLSA actions and obtained favorable results on behalf of plaintiffs, counsel has not shown that this case involved particularly novel or difficult legal issues, or that the time and labor required justifies a higher award.[6]

---

[6]As discussed above, the evidence counsel has submitted is insufficient to substantiate the number of hours allegedly expended on the litigation.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Renewed Unopposed Motion and Memorandum in Support of Approval of Settlement [Docket No. 115] is **GRANTED** in part and **DENIED** in part as stated in this order. It is further

**ORDERED** that plaintiff's counsel is entitled to an award of $100,000 in attorney's fees and costs. It is further

**ORDERED** that this case is dismissed without prejudice. Without fifteen days of this order, the parties shall notify the Court whether the settlement has been funded pursuant to the terms of the settlement agreement. Once the settlement is funded, the Court will enter an order dismissing the case with prejudice. It is further

**ORDERED** that the Court retains jurisdiction over this case for the limited purpose of enforcing the parties' settlement agreement until the settlement is funded and the case is dismissed with prejudice.

DATED February 20, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge